## WILLIS *et al.*, *vs.* JENKINS.

1. The ordinary popular and legal sense of the word "children," embraces only the first generation of offspring; and for it to be extended further, there must either be something in the context showing that a larger signification is intended, or the person using it must know that there neither then is, nor can afterwards be, any person to whom the term can be applied in its appropriate sense.
2. A will cannot be reformed by making additions to it, because the whole will must be in writing *ab origine*.

Bill in Equity, in Pike Superior Court. Demurrer sustained by Judge CABANISS, at Chambers, 1st of February, 1860.

This was a bill brought by the children of Sarah Willis, deceased, against the executor of her father John Jenkins, deceased, for the recovery of a residuary legacy contained in the 6th item of the will, in these words: "All the rest of my estate, not herein specially disposed of, real as well as personal, I give to my beloved wife, Polly, during her life and the continuance of her widowhood, and after her death, the land I now live on, in the county of Pike, to go to my son, John R. Jenkins and his heirs forever, and the rest of my estate, real and personal, to be equally divided according to valuation, among such of my children (sons and daughters) as may, at the death of my wife, be in life." Mrs. Willis, the mother of complainants, and daughter of the testator, died before her father. The widow survived the testator. The complainants claimed on two grounds: 1st. That under the words as they stand, they were entitled to what would have been their mother's share, if she had been in life at the death of the testator's wife; and 2d. That the legal effect of the words, as they stand, had been mistaken by the testator, he having intended to give, and supposing that he had used such words as did give to the complainants what would have been their mother's share, if she had survived the widow. The prayer of the bill was accordingly in the alternative. That their construction of the words used might be decreed, or that failing, then that the will should be so reformed as to express the true intention of the testator. A general de-

murrer to this bill was sustained by the Judge, and that decision is excepted to and assigned as error.

GREENE & STEWART, for plaintiff in error.

GIBSON & MOORE, *contra.*

*By the Court.*—STEPHENS, J., delivering the opinion.

1. We think that these complainants are clearly not entitled to anything under this will, as it stands. The clause under which they claim, is to *such children (sons and daughters)* of the testator as shall be *in life at the death of his widow.* The mother of these complainants, Mrs. Willis, was a child, of the testator, but she was *not* in life at the death of his widow. She therefore took nothing, and they cannot get anything through her. It is equally clear that they cannot take in their own right. For them to do so, they must be embraced in the description of " children—sons and daughters " of the testator; but they are not his children—sons and daughters, but only grand children—grand sons and grand daughters. There is no rule of law which can make the term " children " in this case cover grand children. The word child has neither a popular nor a legal technical signification which includes grand child. Both in popular and in legal parlance, it embraces only the first generation of offspring. It can acquire a more extensive meaning only from the context in which it occurs, or from its use in a case where the person using it must know that there neither then is, nor can afterwards be, any person within the first generation to whom it can be applied. 1. *Jarman on Wills,* 52. In this case the context indicates rather its strict sense than an enlarged one, for it gives "children" the additional description of "sons and daughters." The context, instead of changing the usual sense of the word, confirms it. Nor is there an absence of objects who fall within the usual meaning of the word. There were, when the will was written, and there have been every day since, a number of persons answering the description of " children," in the usual and correct sense of the term. There was not a single reason suggested why grand children should be embraced in this case, except the hardship of leaving them out. That is not a legal reason,

and if it were, it is counterbalanced by the hardship of letting them in. The will is express that the division among these " children " (whoever they may be, whether " sons and daughters" only, or these, together with grand children,) shall be an *equal* one. Each one who takes at all, takes as much as any other one ; that is to say, each grand child would take as much as any child would, if grand children are to take at all. To put grand children, as a class, on the same footing with children, would scarcely be less unnatural than the exclusion of grand children altogether. The words of this will are so specific and so appropriate that they cannot possibly be made to extend to grand children.

2. Can this will be reformed by striking out and inserting ? We think not. There is no doubt that on a different issue, to-wit : the issue of *devisavit vel non*, and parts of the propounded paper to which the testator had not assented, ought to be rejected ; but to allow the insertion of anything into it, upon *parol proof*, would be to set aside the law which requires the will—the whole will—to be in writing. I know that *contracts* which are within the Statute of Frauds are allowed to be reformed by inserting such things as may have been omitted from the writing, through fraud, mistake or accident ; but contracts and wills are placed on very different footings by that statute. Wills must be wholly in writing *ab origine ;* contracts need not be. In the case of contracts, the statute, carefully distinguishing between the whole, and less than the whole, accepts less as sufficient, for its requirement is in the alternative ; the " agreement, *or* some *note* or *memorandum* thereof" must be in writing. The mere jottings of a memorandum will satisfy the statute and put it out of the way. It is true, the Courts have then to cope with the rule which excludes *parol* evidence when offered to vary or add to the writing ; but this rule they hold to be inapplicable to a writing which has been prevented from being what the parties intended it to be, by fraud, mistake or accident. This *rule* is as little in the way of reforming a will as of reforming a contract. In either case, the rule offers no obstruction to the reformation of the writing so as to make it what it was intended to be, whenever the failure to have it so from the beginning has resulted from fraud, mistake or accident. So far as this rule is concerned, contracts and wills are equally effected by it. But the statute affects the

two very differently. Under the conjoint operation of the rule and the statute, the doctrine with respect to contracts is, that if the parties leave a written vestige, this may serve as a skeleton on which *parol* evidence can hang such lacking components of the perfect form as may have been withheld by fraud, mistake or accident. But not so with a will. The statute demands that the whole of it shall be in writing. This view is strongly presented by Mr. *Jarman,* in his treatise on *Wills,* 1 *vol., page* 349.

Judgment affirmed.