## WHITE *et al. vs.* ROWLAND and *vice versa.*

1. A will bequeathed property to the executors of the testator, in trust for the sole and separate use of the testator's daughter for life, "and from and after her death in trust for such child or children as she may leave, his, her or their assigns forever, but if my said daughter shall die leaving no children or child, then to my right heirs living at the time of her death:"

*Held,* that such bequest created an executory devise, which vested on the death of the life usee in such of her children as survived her. A child who died before the life usee took nothing.

2. Grandchildren cannot take under a bequest to children unless there be something in the will to indicate such intention by the testator.

3. A paper to amount to color of title must purport to convey to the claimant thereunder or those with whom he is in privity. A will which leaves a devise to others than the claimant cannot be color of title to him.

4. The action for *mesne* profits is a liberal and equitable one and will admit of equitable defenses.

(*a.*) Where two parties each claimed an interest in land under a will, and with full knowledge of all the facts connected therewith, they collected and voluntarily divided the rents and profits, in a subsequent action of ejectment by one against the other, he cannot recover such *mesne* profits.

5. It is a power incident to courts to appoint a guardian *ad litem* for infants who have causes pending before them, and in the absence of proof to the contrary, this court will presume the acceptance of such trusts, and that the court exercised a proper discretion in such appointments.

(*a.*) If an irregular or void appointment be made, it does not avoid the suit. Suits by an infant are not void, and though defective in wanting a guardian or next friend, the defect is amendable before verdict and cured by verdict.

Wills. Legacies. Title. Prescription. Practice in Superior Court. Minors. Before Judge FLEMING. Chatham Superior Court. June Term, 1881.

Reported in the decision.

A. P. & S. B. ADAMS; CHISHOLM & ERWIN, for White *et al.*

JOHN M. GUERRARD, *contra.*

SPEER, Justice.

This was a suit in ejectment brought to recover an undivided one-third interest in premises situated in the city of Savannah, and known as the western one-fourth part of lot letter C Derby Ward, with a count for *mesne* profits. Both parties have filed bills of exceptions upon the grounds mentioned in their respective motions, as appears in the record. Among the lessors of the plaintiff were Edmund D. Pritchard and Paul Pritchard, who the writ averred were minors, and appeared by their next friend George B. Pritchard, and Augusta W. Barnard, who it was averred was a minor, and appeared by her next friend William M. Barnard.

It appears that at the March term, 1880, of the court, Judge Fleming, upon plaintiff's motion and over defendant's objection, appointed George B. Pritchard as the next friend of Edmund D. and Paul Pritchard, and William Barnard as next friend of Augusta W. Barnard. To the order making these appointments defendants filed their bill of exceptions *pendente lite.*

The grounds of exception in this bill *pendente lite* are:

(1.) The application for these appointments was not made by the infants, they not being before the court seeking said appointment.

(2.) Because the appointments were sought by persons assuming to be attorneys of said infants.

(3.) Because the persons appointed have not assented to act as such *prochein amis.*

(4.) Because it did not appear that said infants, for whom the persons were appointed as guardians *ad litem*, had not guardians appointed by the court of ordinary.

To this suit defendant filed pleas of the general issue; title by prescription under color; statute of limitation as to the property, and *mesne* profits, and also the defense of voluntary payments as to the rents.

The jury, under the evidence and charge of the court, returned a verdict in favor of the plaintiffs, except Wm. M. Barnard, Geo. W. Barnard and Annie M. Baker, for two-thirds of the property sued for and $145.24 as *mesne* profits.

Both sides filed motions for a new trial.

The plaintiffs moved upon the grounds:

(1.) Because the court erred in charging the jury that plaintiffs could not recover rents voluntarily paid or allowed to be paid to defendant before suit.

(2.) Because the court erred in charging that the plaintiffs could not recover *mesne* profits received by defendant before the suit at bar.

(3.) Because the verdict as to *mesne* profits is too small, contrary to evidence and to law.

The defendant's motion for new trial was based:

(1.) Upon the exceptions filed *pendente lite* to the ruling and decisions of said court as appears in the record.

(2.) Because the court charged the jury that the will of Solomon Shad was not written evidence of title, or color of title, for the defendant as to the premises sued for.

(3.) Because the judge of said court, when the charge so requested was submitted in writing, refused to give the following pertinent legal charge in the language requested (except as specified in the fourth ground of this motion):

(1st.) "By the terms of the ninth item of the will of Solomon Shad the children of Catherine E. Barnard took an estate of fee simple, which vested at the death of testator and passed to the heirs of said children."

(2d.) "That the words, children and child, his, her and their heirs and assigns forever, are to be construed as meaning issue, and, therefore, include grandchildren."

(3d.) "The testator did not intend that the property should accumulate in the hands of the children of Catherine E. Barnard, who survived her, but intended to provide for her descendants, and at the death of Mrs. Catherine Rowland her portion passed to her children."

(4th.) "The period of time in which the statute of limitations will bar the rights of a plaintiff in ejectment is as to the land seven years and to the rents four years."

(5th.) "If plaintiff seeks to avoid the effects of the statute of limitation the burden of proof is on him to show that he comes within some of the exceptions to it."

(6th.) "As it is admitted on both sides that plaintiffs and defendant both claim under the will of Solomon Shad, that will is, as to defendant, color of title, if the jury find that he held possession of the premises under it."

(7th.) "The question whether or not defendant held the premises in dispute adversely to plaintiff, is for the jury to decide."

(8th ) "It being proved that the minor, Augusta W. Barnard, has a guardian, appointed by the ordinary of Liberty county, the guardian *ad litem* appointed for her by this court cannot recover the interest claimed for her in the property."

(9th.) "If the jury find that the lessors of plaintiff, by themselves, or their agents, paid to defendant his proportion of the rents of the premises freely and voluntarily, with full knowledge of all the facts, and without misplaced confidence, and without art or deception, or fraudulent practice on the part of the defendant, the rents cannot be recovered from defendant."

(10th.) "That as to the rents and profits so paid, the guardian of Augusta W. Barnard, having been appointed March 6th, 1875, and having, as such guardian, a right to demand said rents and profits; if the jury shall find that

the statute of limitation had run against said guardian, the ward is barred also."

(11th.) "The legal title to the property being vested in trustees, who can sue for it, if they failed to do so within the time prescribed by law, so that their right of action is barred, the infant *cestuis que trust*, who have only an equitable interest in the property, will be barred also."

(12th.) "If the jury find that William R. Pritchard, N. C. Mills, George R. Pritchard and John C. Rowland, from time to time acted as trustees *de facto* of the parties interested in the premises, and as such collected and distributed the rents among those who claimed them, the consequences of the acts of the several trustees *de facto* will be visited upon the *cestuis que trust*."

(13th.) "Estoppels are not favored by the law and operate only between the parties to them."

(14th.) "If there be any estoppel arising from deeds from Mrs. Baker, and George W. Barnard, and William M. Barnard to John C. Rowland, it does not operate to benefit any other person."

(15th.) "William R. Pritchard, a child of Mrs. M. V. Pritchard, having died about a month before this suit was commenced, any rents which might have belonged to him cannot be recovered in this suit."

(4.) Because the judge of said court refused to give in charge to the jury the 1st, 2d, 3d; 4th, 5th, 8th, 10th, 11th, 13th, 14th, 15th points or specific requests to charge contained in the said written requests to charge submitted to him.

(5.) Because the judge charged the jury that under the will of Solomon Shad, the defendant was not entitled to the the premises sued for in said case.

(6.) Because the verdict of the jury by which they found for the plaintiff a portion of the premises sued for is contrary to law and evidence.

All the grounds in both motions were approved, and being then overruled by the court, both movants excepted thereto and assign error.

Both parties in this suit claim the premises in dispute under the will of Solomon Shad, made in 1829, and with its after codicils proved in 1833. The ninth item of the will is in the following words, and the construction of which involves the respective title of each party litigant as set up by them:

" Ninth. I give, devise and bequeath unto my executors hereinafter named, and to the survivors and survivor of them, the remaining fourth part of all that, my said trust lot in Derby Ward, the said fourth being the western fourth of the said lot, on Whitaker street, with the appurtenances; to have and to hold the said remaining fourth part of said lot, with the appurtenances, unto my executors and the survivors or survivor of them, and the executors and administrators of such survivor, in trust to and for the sole and separate use of my daughter, Catherine E. Barnard, wife of Timothy Barnard, for and during the term of her natural life, not subject to her husband's debts or control, and from and after her death, in trust for such child or children as she may leave, his, her or their heirs and assigns forever, but if my said daughter, Catherine, shall die leaving no children or child, then to my right heirs living at the time of her death."

It appears from the evidence that Catherine E. Barnard, the life tenant, died in September, 1861. Her children who were in life at the time of her death were Solomon S. Barnard and Mrs. Virginia Pritchard. Solomon S. died in February, 1875, leaving as his heirs his widow, Annie M. Barnard, and his children, Mrs. Mary C. Mallard (who died a few months ago), William M. Barnard, now about thirty-one years of age, George W. Barnard, about twenty-nine years of age, Annie W. Baker, twenty-six years of age, and Augusta Barnard, a minor, one of the plaintiffs.

Mrs. Virginia Pritchard died July 8th, 1863, leaving five children, Virginia B. (now Mrs. White), born 4th May, 1854; George B. Pritchard, born 2d November,

1857; William R. Pritchard, born 21st June, 1856; Edmund D., born 13th September, 1859; and Paul F., born 7th August, 1861. Catherine E. Barnard, the life tenant under the will, had also a daughter who married the defendant, John C. Rowland, and who died in 1857, leaving one child who died, about nine years old, in 1865. It is as the heir-at-law of his wife and daughter the defendant claims. It will be noted that Mrs. Rowland, wife of defendant, died in 1857, several years previous to the death of her mother, the life tenant, Catherine E. Barnard.

The admitted facts are that the life tenant, Catherine E. Barnard, died in September, 1861, leaving two children only surviving, to-wit, Solomon S. Barnard and Mrs. Virginia B. Pritchard, under whom plaintiff's lessors claim. That Rowland's wife, the other child, died before her mother, Catherine E., the life tenant, although leaving a child, Marian Rowland, who was the granddaughter of the life tenant; and who survived the life tenant.

It is further admitted that the suit was brought within twenty years from the death of the life tenant. It is contended by the plaintiffs below that Rowland's wife never had any interest in the property devised in the ninth item of the will, because of her death before her mother, and therefore left none to her child, and that her taking at all was contingent upon her surviving her mother. The ninth item of the will set out above gives the property to the executors in trust for testator's daughter, Catherine E. Barnard, for life, " and from and after her death, in trust for such child or children as she may leave, his, her or their heirs and assigns forever ; but if my said daughter Catherine shall die, leaving no children or child, then to my right heirs living at the time of her death."

The question is, what was the testamentary scheme indicated by the testator in this item, as to the property devised?

1. 2. In construing wills it is the duty of a court " to

search diligently for the intention of the testator, and give effect to the same as far as it may be consistent with the rules of law." Code, §2456. It is, in fact, making a will for a man, to give to his words a meaning they did not have at the time they were written. 40 *Ga.*, 577.

Under the construction we give to this clause of the will, there will be no violation of any rule of law; nor is the intention, as thus construed, unreasonable or unnatural. The will shows that among testator's right heirs were his wife and two unmarried daughters and other children. His desire seems to have been that such of his right heirs as were living at the termination of the life estate should take the property, in the event that the life tenant left no children. This desire to keep the property, the fruit of his own toil, in his own family and to be enjoyed by those of his own blood, is by no means unnatural or unusual. Note the words, "for the sole and separate use of my daughter, Catherine E., for and during the term of her natural life ⁎ ⁎ and from and after her death, in trust for such child or children as she may leave." It is tantamount to saying only to such children as she may leave, of course when she dies. The fact is, she left only two children, Solomon S. Barnard and Mrs. Pritchard. She did not leave Mrs. Rowland; Mrs. Rowland left her. The provision is for a definite failure of issue—"if my daughter shall die leaving no child or children, then to my right heirs living at my death." The words "his, her or their heirs and assigns forever," are doubtless intended to show that the child or children who would chance, by surviving, to take under his will, should take a fee; if only one child should survive the life tenant, then it would be to his or her heirs, dependent upon the fact whether it was a male or female who survived; if more than one, then it would be to their heirs, etc.

We think this view of this construction sustained by this court in 58 *Ga.*, 259, where "in a devise to testator's son for life, and after his death to his lawful heirs or chil-

dren, and in the event of his leaving no such child or children the property to revert to the testator's estate," this court ruled that "the children left by the tenant for life were seized of the remainder in fee."

But it is insisted by the defendant in error that though Mrs. Rowland, the daughter of the life tenant, may have died before the life tenant, yet her daughter, Marian Rowland, survived the life tenant and stood in her mother's place, and that the word "children" should be held to extend to and embrace grandchildren in the event of the death or absence of children. In reply it may be said grandchildren cannot take in a will under a bequest to children, unless there be something in the will to indicate and effectuate such intention by the testator. 25 *Ga.*, 549.

The ordinary, popular and legal sense of the word " children" embraces only the first generation of offspring, and for it to be extended further there must either be something in the context showing that a larger signification was intended, or the person using it must know that there neither is nor can afterwards be any person to whom the term can be applied in its appropriate sense. 30 *Ga.*, 167 ; 1st Jarman on Wills, 52. Tested by these well settled rules we can see nothing in this will or its context that shows the testator intended to extend the word child or children to embrace grandchild or grandchildren. 25 *Ga.*, 549 ; 30 *Ga.*, 167-8-9.

Under this construction we are constrained to hold that under this will the children of the tenant for life took a contingent estate in remainder, an estate contingent on their surviving the life tenant, and as Mrs. Rowland died before the life tenant, neither she nor her daughter surviving took any interest under the terms of this devise. But on the death of the life tenant in 1861, the remainder heretofore contingent became vested in the other two surviving children of the life tenant, to-wit, Mr. Barnard and Mrs. Pritchard. In looking through the context of this will, we are strengthened in the correctness

of this construction. In the three preceding items, sixth, seventh and eighth, devising the other three parts of the same lot to the three other married daughters, the testator has used identically the same language as in the ninth item. The words of this devise appearing thus so often in this paper, it would be remarkable if this will had omitted, unless designedly, in all of these cases provision for the representatives of deceased children. We cannot understand the omission to provide for the representative of a deceased child, except upon the theory that he intended that the objects of his bounty, beyond the children that might survive his daughters, should be his right heirs. If the defendant below could not claim under his wife, neither could he claim under their child who survived the life tenant, because, as heretofore stated, under this will the words child or children do not include grand-child or grand-children. 17 *Ga*, 80.

3. But has the defendant a prescriptive title? He claims he has held peaceable, continuous and adverse possession more than seven years under color of title, and that this will bar plaintiff's recovery. The color of title relied upon is the ninth item of the will of testator. The will does not designate the takers after the life estate, but leaves them to be designated by a contingency, to-wit, such children as may survive the life tenant. Who the takers of this estate in contingency would be, could only be determined at the death of the life tenant and as to which, if any, of her children survived her. As Mrs. Rowland did not survive the life tenant, what title, either real or colorable, vested in her? None whatever. The title was in the executors until the life tenant's death, and then the trust became executed, the contingent estate became vested and the survivors took. But under our construction of this will no estate vested in her or her child, and how can it be said it gave them color of title, since it neither professed to pass title to them nor to any under whom they claim?

v 67—36

Color of title is defined to be "a writing upon its face professing to pass title, but which does not do it either from want of title in the person making it, or from the defective conveyance" that is used. 9 *Ga.*, 443.

This will, so far from being written evidence as "color" for Rowland's title, is written evidence against it, if we have properly construed the ninth item. To claim a writing as color of title, which shows by its terms a title against the claimant's right, which, so far from professing to pass title to the one in possession, passes title to one adverse to his possession, certainly would not aid a possession of seven years and establish a prescriptive right. One's possession cannot be helped by a paper (in legal presumption) which is continuously pronouncing such holding unlawful. Code, §§2679, 2682–83; 25 *Ga.*, 181; 63 *Ib.*, 306.

Holding as we do in the construction of this will that neither Mrs. Rowland nor her daughter, nor the surviving husband and father, took any interest under it, of course it cannot be held to be even "color of title," to aid their possession and ripen it into a prescription. 32 *Ga.*, 154.

4. One of the grounds of error complained of by the plaintiff below was the charge of the court on the subject of *mesne* profits. It is alleged that the court erred in charging the jury "that plaintiff could not recover rents voluntarily paid, or allowed to be paid, to defendant before suit," and in charging "plaintiff could not recover any *mesne* profits received by defendant before the suit at bar."

"The action for *mesne* profits is a liberal and equitable action, and will allow of any kind of an equitable defense." 2 Johns. Cases, 438. In the case of Andrews *vs.* Hancock, 1 Brod. and Bing., 37, which was a rent case, the court held that where a voluntary payment was made, with full knowledge of the facts, the money could not be recovered.

The general principle underlying this question is stated in section 3121 of the Code: "Mere ignorance of the law on the part of the party himself, where the facts are all

known and there is no misplaced confidence, and no arti-
fice or deception or fraudulent practice is used by the
other party either to induce the mistake of law or prevent
its correction,will not authorize the intervention of equity."
This principle was recognized in the case of *Arnold &*
*DuBose vs. Georgia Railroad Company,* 50 *Ga.,* 304, in which
this court said : " If payment beyond the rate specified in
the charter be made voluntarily by the shipper through
mere ignorance of the law, or paid where the facts are
all known, and there is no misplaced confidence, and no
artifice or deception or fraudulent practice is used by the
other party, an action will not lie to recover it back."

To allow the doctrine that ignorance of law is a ground
of defense, would overturn the foundations of every sys-
tem of jurisprudence. Bateman on Com. Law, 26. Judge
Story says : " As every man is presumed to know the law
and to act upon the rights which it confers, when he knows
the facts, it is culpable negligence in him to do an act, or
set up a contract, and then set up his ignorance as a de-
fense." 1 Story Equity, 149 ; 12 East., 38 ; 2 *Ib.,* 469 ;
5 Taunton, 144 ; 8 Wheat., 215. Under this weight of au-
thority and many others, it may be well said as was said
by the judges pronouncing the opinion of the supreme
court of New York, in Clark *vs.* Dutcher, 9 Cowen, 681 :
" Although there are a few *dicta* of eminent judges to the
contrary, I consider the current and weight of authorities
as clearly establishing the position that when money is
paid with a full knowledge of all the facts and circum-
stances upon which it is demanded, or with the means of
such knowledge, it cannot be recovered back upon the
ground that the party supposed he was bound in law to
pay, when in truth he was not. He shall not be permitted
to allege his ignorance of the law, and it shall be consid-
ered a voluntary payment." It appears from the record,
and is admitted as true, that Rowland, the defendant be-
low, was paid, received the rents of his proportion of this
estate without fraud or imposition. That he, as a tenant

White *et al.* *vs.* Rowland and *vice versa.*

in common, claiming under the same devise, with their consent had possession of the premises with the plaintiff's lessors and with those under whom they claimed from August, 1865, and in common and with their knowledge and consent, his proportion of the rents were paid to him by the common agent of all who were interested. To our minds the case, under the facts, is a voluntary payment to defendant with the knowledge and consent of the plaintiff's lessors and their privies, and the charge complained of was a correct submission of the law of the case to the jury as to the *mesne* profits recoverable.

5. As to the objection made by defendant below to making Barnard and Pritchard *prochein amis* to represent the minor plaintiffs in this suit: admitting it was irregular to appoint a guardian *ad litem* or *prochein ami* to represent an infant who had a duly appointed guardian, still, treating the appointment as void, the rule is "suits by an infant are not void, and though defective in wanting a guardian or next friend, the defect is amendable before verdict and cured by verdict. Code, §3263.'

It is a power incident to courts to appoint a guardian *ad litem* for infants before the courts with causes pending, and in the absence of proof to the contrary, this court will presume the acceptance of such trusts by those appointed, and that the court exercised a proper discretion in such appointment. For these assignments of technical error, if error at all, we are not inclined to reverse this judgment which we think is fully sustained, if not required, in favor of these plaintiffs below by both the law and facts in the record.

Let the judgment of the court below be affirmed. 13 *Ga.*, 467 ; 61 *Ib.*, 85.

Judgment affirmed.