FULGHUM *et al.*, executors, *v.* STRICKLAND.

A testator made the following bequest: "If I should die before my wife, I give to her a life-estate in all my property, both real and personal, of all kinds whatsoever, as long as she may remain a widow. But in the event of her marriage, then the whole of the estate, both real and personal, shall immediately go to and be distributed or divided equally among the children of my two sisters, Mrs. T., Mrs. F., and my brother A. A. J., each of the above families to share equally, to have one third of my property, both real and personal." *Held:* (1) The bequest was to the children of the named sisters and brother as a class. (2) Only the children of the named sisters and brother take under the will, and the descendants of children who died before the testator take no interest thereunder. (3) The phrase, "each of. the above families to share equally," serves to indicate the plan of division, and does not enlarge the meaning of the word "children" so as to include grandchildren.

Argued May 19, — Decided June 14, 1905.

Equitable petition. Before Judge Spence. Terrell superior court. December 2, 1904.

Mrs. Mabel C. Strickland brought suit against the executors of S. T. Jordan, deceased, to recover a legacy claimed under the will of S. T. Jordan. It appears from the petition that Jordan died after the execution of his last will and testament, which is as follows: "I, S. T. Jordan, of the County of Terrell, and State of Georgia, being of sound and disposing mind and memory, and being desirous to settle my worldly affairs while I have the strength so to do, do make and publish this my last will and testament, hereby revoking all wills by me at any time heretofore made; and I commit my soul to God who gave it, and my body I desire to be buried in a neat and Christian manner besides my daughter in the cemetery at Albany, Ga., or, if more convenient, at the feet of my sons at Dover, in the Baptist cemetery. I desire that all my debts that I may owe be paid as they mature, and the remainder of my worldly estate I dispose of as follows: If I should die before my wife, I give to her a life-estate in all my property, both real and personal, of all kinds whatsoever, as long as she may remain a widow. But in the event of her marriage, then the whole of the estate, both real and personal, shall immediately go to and be distributed or divided equally among the children of my two sisters, Mrs. Miles Tanner, Mrs. W. H. Fulghum, and my brother Amos A. Jordan, each of the above

families to share equally, to have one third of my property, both real and personal. My half brothers, N. H. Cornelius, A. Y. A. Jordan, and sisters, Mrs. S. E. Wilson and Mrs. Roberta H. Hannau, each I will one dollar. It is my wish and will during the life of my wife, and as long as she remains a widow, she shall have for her support monthly fifty dollars, arising from the income of my estate, by my executors monthly, and whatever the amount the income of my estate shall exceed this amount above expenses shall be divided equally between my two sisters' named and brother's children, each sister's children one third each, and my brother's children the remaining third." His widow elected to take a certain amount of money in lieu of her life-interest in the estate, which sum has been paid by the executors, and she has agreed, in consideration thereof, that the remainder of the estate may be divided at once according to the terms of the will. At the time of the execution of the will Mrs. Fulghum was dead, and none of her children were minors or living as one family under the same roof. Her children were Amos A. J. Fulghum, the father of petitioner, Mrs. Rogers, Mrs. Page, Mrs. Bryan, William H. Fulghum, and Thomas J. Fulghum. Of these Amos A. J. Fulghum and Mrs. Rogers were dead when the will was executed. Mrs. Rogers left eight children surviving her. Petitioner is the sole child of her father, Amos A. J. Fulghum. At the time the will was executed the other sister of the testator named in the will, Mrs. Tanner, was dead. Mrs. Tanner left several children, all of whom were adults and had families of their own. Amos A. Jordan was dead at the time the will was executed, and his children were all adults with families of their own. Petitioner claims that she is of the blood of Mrs. W. H. Fulghum and is a member of her family, and as such is entitled to a one-sixth part of the estate devised to the children of Mrs. W. H. Fulghum, now in the hands of the executors for distribution, which estate amounts to $27,000. The executors deny that petitioner is a legatee, and her suit is brought to recover her interest in the legacy. By amendment petitioner alleged, that at the time of making his will the testator well knew his said brother and sisters were dead, that their children had families of their own, and that some were dead leaving children who were his grandnieces and grandnephews; that said testator was fond of

his grandnieces and grandnephews, and was especially fond of petitioner, and had often caressed her and expressed his sympathy and love for her because she had been left fatherless so young in life; that at the time the will was executed the petitioner was only fourteen years of age, and without means of support. The executors demurred to the petition, on the ground that it appeared therefrom that the devise was to certain nephews and nieces of the testator, and that the petitioner was not embraced in that class; that the devise was to the children of the two sisters and brother of the testator as a class, and that the petitioner, being a grandniece, was not comprehended within the meaning of the word "children" as used by the will. The court overruled the demurrer, and the exception is to this judgment.

*John R. Irwin*, for plaintiffs in error, cited Civil Code, § 3324; *Ga. R.* 8/37; 74/139; 25/549; 30/976; 36/375; 80/675; 82/215; 98/321.

*Lavender R. Ray* and *James G. Parks*, contra, cited, as to construction of wills, Civil Code, §§ 2324–5; *Ga. R.* 12/47, 155; 27/321; 68/145, 147; 69/198; 110/707; 4/380; 72/850, 856, 858; 115/896. The word "children" may be enlarged by other words, so as to include grandchildren: *Ga. R.* 4/380; 28/357; 30/167; 52/694; 67/546, 554; 69/498; 71/384; 72/858; 80/681; 1 Roper, Legacies, 70; 2 Wms. Exrs. (7th ed.) 362; 1 Ves. 196; 3 Ves. 258; 7 Allen, 72; 5 Pa. St. 264; 8 Pa. St. 229, 231; 10 Pa. St. 213; 40 Pa. St. 29, 36. Meaning of "children" is enlarged here by the word "family:" Bouv. Law Dict., "Family," "Legatee;" 1 Roper, Leg. 115–117, 92–94, 70; 2 Jarm. Wills, 622–30; 2 Redf. Wills, 71; 2 Wms. Exrs. 1213; Sugd. Powers (4th Lond. ed.) 525; 27 *Ga.* 321; 117 *Ga.* 348; 18 W. Va. 675–84; 3 W. Va. 310; 35 Md. 519–27; 5 Pa. St. 385–9; 5 Maule & Sel. 126–30; 9 Ves. 319–25; 1 Keen, 176; 1 Mylne & Cr. 401; 2 Cromp. M. & R. 638, s. c. 5 Tyrwh. 1013; 6 Ves. Jr. 159; 17 Ves. 255.

EVANS, J. (After stating the facts.) The general rule is that in a devise to children as a class, the word "children" is to be construed as immediate offspring, and will not include grandchildren. So universal has this rule of construction obtained, that Sir William Grant said he "never knew of an instance

where there were children, to answer the proper description, that grandchildren were permitted to share along with them." Oxford v. Churchill, 3 Ves. & Beam. 53. This principle is firmly intrenched in the law of this State, and grandchildren can not take under a bequest to children unless there be something in the will to indicate such intention by the testator. *Walker* v. *Wilkins*, 25 *Ga.* 549; *Willis* v. *Jenkins*, 30 *Ga.* 167; *White* v. *Rowland*, 67 *Ga.* 546. It is evident, from a casual reading of the will, that the testator intended that his estate on the marriage of his widow, or upon her death without having again married, should be divided into three equal parts, one of which was to be distributed among the children of Mrs. Miles Tanner, another among the children of Mrs. W. H. Fulghum, and the third among the children of Amos A. Jordan. Unless the use of the word "families" enlarges the meaning of the word "children," the bequest is to the three classes of children, each class to take one third of the estate, and the part devised to the children of Mrs. Fulghum would be divided among her children in life at the testator's death, to the exclusion of the issue of a child who predeceased the testator. *Springer* v. *Congleton*, 30 *Ga.* 976; *Davie* v. *Wynne*, 80 *Ga.* 673; *Martin* v. *Trustees*, 98 *Ga.* 320. The bequest is not to the "families" of the two sisters and the brother, but is to their children. The language of the will is "then the whole of the estate, both real and personal, shall immediately go to and be distributed or divided equally among the children of my two sisters, Mrs. Miles Tanner, Mrs. W. H. Fulghum, and my brother Amos A. Jordan." The personæ designatæ are the children of the testator's sisters and brother. Apparently the testator had in mind a division of his estate among these children, so that all of the children should not share per capita in the whole estate, but that each set of children should participate per capita in the share devised to the particular class. That is to say, the children of Mrs. Fulghum were to share per capita in one third of the estate; the children of Mrs. Tanner were to share per capita in one third of the estate, and the remaining third of the estate was to be divided per capita among the children of Amos Jordan. To make this testamentary scheme perfectly clear, he stated, "each of the above families to share equally, to have one third

of my property, both real and personal." By the use of the word "families" the testator had no intention to broaden or enlarge the word "children," but intended to furnish a plan of division. His intent manifestly was to give a third of his estate to each class of persons, ascertained to be the families of his sisters and brother, consisting of their children. This would seem to be the natural meaning to give to these words used in the particular context. "Each of the above families" was evidently intended by the testator to refer to the three sets of children to whom, as three distinct classes of persons, he had devised the residuum of his estate.

The English courts have frequently been called on to define the word "family," and to construe wills where the bequest or devise was to one's family. In some instances this term has been given a very limited and circumscribed meaning, and in others a more enlarged operation, varying according to the subject-matter of the gift and the context of the will. The question has been rather infrequent before the courts of this country. In all of the cases examined (and I have examined quite a number) the legacy or devise was to a family. I have not been able to find a case where the legacy was to sets of children according to families. Now it has been held that a bequest to one and his family is equivalent to a bequest to one and his children. 12 Am. & Eng. Enc. L. (2d ed.) 870. The testator's intent in such cases is the controlling question, interpreted in the light of the testamentary scheme. What was the scheme of this testator? Firstly, it was to divide his estate into three equal parts; secondly, it was to give one part to each of three named sets of children; thirdly, that each set of children was to take their separate portion as a class. That this was his general scheme is made still clearer by the words used in disposing of the surplus above the income devised to his wife: "and whatever amount the income of my estate shall exceed this amount above expenses shall be divided equally between my two sisters' named and brother's children, each sister's children one third each, and my brother's children the remaining third." Here we find the same general purpose of the testator in dividing the surplus income into three equal parts, and a division thereof between three sets of children, each set taking a third. In directing a division of the surplus in-

come the testator did not designate the different sets of children as different families, but the language which he employed throws a flood of light on the meaning he gave to the word " families" in the prior clause of his will.

But it may be said that this construction will exclude descendants of children who predeceased the testator, and who were equally dear to him as his nieces and nephews. The reply to this is twofold. If to exclude these would work a hardship, so also it would be a hardship to the nieces and nephews to reduce their share. But the all-sufficient answer is that the testator in his will did not name them as the objects of his bounty. The plaintiff's petition discloses that at the time the will was made her father was dead and the testator knew that fact. Yet with this knowledge he bequeathed his property to his nieces and nephews without providing for the children of a deceased nephew. The hardship resulting from excluding the plaintiff from taking under the will could not be greater than it was in the case of *Crawley* v. *Kendrick*, 122 *Ga.* 183; and the court there said: " When he [testator] made his will he knew that his son then had a child in life, with the possibility of others being born, and that the plaintiff in error, a child of a deceased daughter of a son, was also then living. There is not a word in his will which indicates that the grandchild of his son should take under the plain designation of children of his son." Courts are to construe wills, and can not make wills. Only the children of the named sisters and brother take under this will, and the descendants of children who died before the will was made take no interest thereunder.

The court should have sustained the demurrer.

*Judgment reversed. All the Justices concur, except Simmons, C. J., absent.*