741. PHILPOT, administrator, *v.* TEMPLE BANKING COM-
PANY *et al.*

1. A certificate of deposit is a subsisting chose in action and represents the fund it describes, so that a delivery of it as a gift constitutes an equitable assignment of the money for which it calls.
2. A brother who held a certificate of deposit issued by a bank and payable to his order, during his last illness and very shortly before his death, delivered the certificate to a brother, with proper words of gift, but failed to indorse the certificate at the time of delivery. Subsequently he indorsed the certificate, and had the same deposited in a bank to his credit. Contemporaneously with the deposit, he gave to his brother a check on the bank for the full amount of the certificate deposited. *Held:* (*a*) The delivery of the certificate of deposit constituted a valid gift causa mortis. (*b*) The subsequent execution and delivery of the check for the exact amount of the certificate did not affect the validity of the gift, but was the means adopted by the donor of perfecting the gift. (*c*) Even if the gift had not been fully consummated by the delivery of the certificate of deposit, the giving of the check operated as an equitable assignment of the certificate, and, consequently, an assignment of the fund. (*d*) The failure of the donee to present the check to the bank for payment, until after the death of the donor, did not operate as a revocation of the gift.
3. A party who attacks the validity of a gift, on the ground that the donor was mentally incapable of making the gift, or that the gift was procured by fraud or undue influence, has the burden of proving his charge. There is no evidence in this case tending to show either mental incapacity or fraud or undue influence.
4. The verdict as directed by the court was demanded by the evidence.

Complaint, from city court of Polk county—Judge Irwin. August 8, 1907.

Argued December 11, 1907.—Decided February 24, 1908.

*O. A. Nix, John K. Davis,* for plaintiff.

*Bunn & Bunn, W. H. Trawick,* for defendants.

HILL, C. J. John McCullough, after living in Texas for some years, unexpectedly came to the home of his brother Enoch McCullough in Polk county, Georgia, on the 26th of June, 1904. He was in bad health and was suffering from an incurable disease. At the dinner table, his brother and his brother's wife and son being present, on the day of his arrival, he stated to his brother and family that he had come back from Texas to his brother's home, where he wanted to remain until he died; that he was in bad health and did not expect to recover, and that he wanted his brother and family to take care of him and nurse him as long

as he lived; that he had, besides a small amount of cash, a certificate of deposit issued to him by the First National Bank of Terrell, Texas; that he wanted his brother to take the certificate of deposit, pay the expenses of his sickness and burial in the event of his death, which he expected to occur as a result of his physical condition in a short time, and that the balance of the money, represented by the certificate, he wanted him to have. Several days after this first conversation, he again told his brother about the certificate of deposit, and delivered it into the possession of his brother, telling him that after paying the expenses of his sickness and funeral, he was to keep the balance of the proceeds of the certificate as his own. He did not, however, indorse the certificate, but delivered it, unindorsed, to his brother. His brother called in his wife, gave her the certificate, and told her to put it in her trunk and keep it. John McCullough appeared to be in bad health, and was despondent and hopeless of his ultimate recovery, but his mental condition was entirely normal. He continued to grow worse, and, about a week after his arrival, called in the family physician, Dr. W. F. Goldin, who treated him from then until he died on the 21st of July, 1904. This physician testified as to his physical condition, and stated, that his mental condition was unaffected by his disease, that he talked as intelligently as any man he had ever talked to, and that there was no indication of mental weakness until just a few days before his death. One day, while the doctor was present, the deceased told him about the certificate of deposit on the Texas bank, and that he had intended to make a deposit of the certificate in one of the banks of Atlanta, but that he had neglected to do so, and said: "I understand you are interested in a bank, and I want you to take it down there and deposit it for me. I gave it to Enoch, the proceeds of it, and I want you to have your pay. I want you to take it down there and have it collected for him." The doctor suggested to him to have it deposited in the bank at Temple in his own name; that he would then have the bank at Temple to send him a check for the amount of the certificate, and make it payable to his brother Enoch, and he could give this check to his brother. Mrs. McCullough, wife of Enoch, at the request of her husband, got the certificate and delivered it to the doctor. He saw that the certificate of deposit was made payable to John McCullough and was not indorsed

by him, and he called attention to this fact. John McCullough was in bed and was nervous, and he asked the physician to write his name for him on the back of the certificate, which the physician did in his presence and in the presence of his brother and his wife. The physician took the certificate, enclosed it in a letter, and sent it to the bank at Temple, and personally directed the cashier of the bank to deposit the certificate in the name of John McCullough and to send it on to Texas for collection, and to prepare a check payable to the order of E. E. McCullough covering the amount of the certificate. This was done by the cashier. The check was taken to John McCullough by the physician and delivered to him, and he asked the physician to sign his name to the check, which the physician did, in his presence, and John McCullough then delivered the check into the possession of his brother Enoch. The certificate of deposit issued by the Texas bank was deposited at the Temple bank on the 12th of July, 1904. The check drawn by John McCullough on the Temple bank was dated July 13, 1904, and on that day was delivered by John to his brother Enoch. John McCullough died on the 21st of July thereafter, and Enoch McCullough presented the check to the bank on August 15, was then paid by the bank a small amount in cash, and deposited the balance of the check, amounting to $1,050, to his own credit in the bank. The certificate of deposit issued by the bank in Texas is as follows: "No. 9461. The First National Bank of Terrell, Texas. June 21st, 1904. John McCullough has deposited in this bank $1,092.21/100, payable to the order of himself on the return of this certificate properly indorsed. E. S. Morrow, Assistant Cashier. Negotiable at any bank. Certificate of deposit." Indorsed: "John McCullough, W. F. Goldin." The check drawn by John McCullough on the bank at Temple is as follows: "Temple, Ga. July 13th, 1904. The Temple Banking Company. Pay to the order of E. E. McCullough $1,092.21-100, one thousand and ninety-two dollars and twenty-one cents. John McCullough." Indorsed: "E. E. McCullough, W. F. Goldin."

Some time after the occurrences above narrated, J. H. Philpot, as administrator of John McCullough, brought suit in the city court of Polk county against E. E. McCullough, W. F. Goldin, and the Temple Banking Company, the purpose of the suit being to

recover the sum of $1,092.21 collected by the bank as the proceeds of the certificate of deposit from the Texas bank, which sum, on the day of John McCullough's death, was on deposit with the Temple Banking Company to the credit of the deceased. In the suit by the administrator it was alleged, that the title to this money was in the estate of John McCullough, that the heirs at law of John McCullough were his brother Enoch McCullough and Florence Doster, a minor child, who is the granddaughter of the sister of John McCullough. The petition charged, that Enoch McCullough unlawfully secured said $1,092.21 from the Temple Banking Company after the death of his brother; that the Temple Banking Company, having actual notice of John McCullough's death, and of the fact that no administrator had been appointed on his estate, unlawfully turned over said money to Enoch McCullough, and that the said money was secured by Enoch McCullough and Dr. W. F. Goldin from the bank with the understanding that Goldin, who was the president of the bank, could use a large part of the fund. On the trial of the case the gift by John McCullough to his brother Enoch was attacked on the ground that the gift was incomplete and not consummated prior to the death of John McCullough; that the check on the Temple Banking Company which John McCullough had made and delivered to his brother not having been presented for payment prior to the death of John McCullough, the gift was, by operation of law, revoked by his death; also that the gift by John McCullough to his brother Enoch was made when John had not sufficient mental capacity to make a gift; and further, that said gift was obtained by the undue influence of Enoch, his family, and Dr. Goldin. At the conclusion of the evidence, both sides moved the court for a verdict, and the court directed a verdict for the defendants; whereupon the plaintiff filed a motion for a new trial, based on the general grounds and on the following special grounds: (1) Because the gift of one's own check, made in the expectation of death, is not valid where said check is not paid before the donor's death: and the check which John McCullough had drawn, payable to the order of his brother E. E. McCullough, not having been presented at the bank or paid before the death of the drawer, was revoked by his death, and, therefore, the gift claimed to have been made by John to his brother Enoch was not fully executed,

as no actual or symbolic delivery of the property or money took place during the lifetime of John McCullough; and for this reason, the court should have directed a verdict for the plaintiff. (2) Because the questions of mental capacity, fraud, and undue influence, and whether or not the check was in existence at the time of John McCullough's death, should have been submitted to the jury. There were other special grounds set out in the motion for a new trial, which are not considered material, under the view entertained by this court on the above two questions.

The controlling question in this case is whether the foregoing uncontroverted facts constitute a valid gift. Much learning has been exhibited by text-writers and courts as to gifts inter vivos and gifts causa mortis. From the very earliest times it has been uniformly held by the courts of England and this country that any kind of personal property may be the subject-matter of gifts either inter vivos or causa mortis. Gifts inter vivos and gifts causa mortis differ in nothing except that the latter are made in the expectation of death, become effectual only on the death of the donor, and may be revoked. Otherwise, the same principles apply to each. The Civil Code, §3564, defines the essentials of a gift: "To constitute a valid gift there must be the intention to give by the donor, acceptance by the donee, and a delivery of the article given, or some act accepted by the law in lieu thereof." Section 3567 declares, that "Actual manual delivery is not essential to the validity of a gift. Any act which indicates a renunciation of dominion by the donor, and the transfer of dominion to the donee, is a constructive delivery." And section 3574 declares, that "A gift in contemplation of death (donatio causa mortis) must be made by a person during his last illness or in peril of death, must be intended to be absolute only in the event of death, and must be perfected by either actual or symbolical delivery. Such a gift, so evidenced, may be made of any personal property by parol, and proved by one or more witnesses."

Applying the foregoing statutory provisions to the facts in this case, we think it is very clear that the gift of John McCullough to his brother Enoch was in all essentials a valid gift in contemplation of death. It is insisted that the gift in question was not complete, because there was no delivery by the donor to the donee; that the check which John McCullough gave to his brother Enoch

on the Temple Banking Company did not operate as a delivery of the money in the bank or a valid transfer of said money; and that, not having been paid before the donor's death, there was no completion of the gift, and that the death of the donor operated as a revocation of the gift, and that after the death of the drawer of the check, the payee had no right to collect the amount of the check, and the drawee bank had no authority to pay it. It is true that it has been frequently held that the gift of the donor's own check, made in expectation of death, is not good where such check is not paid before the donor's death, and that the death of the drawer countermands or revokes the authority of the drawee to pay the check, unless it has been certified. These decisions, by express terms, apply only to ordinary bank checks drawn by the donor himself. But it has been universally held that a check payable to the donor or bearer is capable of being made a gift inter vivos or causa mortis, and that in such gifts a mere delivery of the check, accompanied by proper words of gift, is sufficient; and it is not necessary, in order that the gift may be complete, that the check shall be presented for payment before the death of the donor. Thornton on Gifts and Advancements, § 317; Rhodes v. Childs, 64 Pa. St. 18. It has also been frequently held that a certificate of deposit, payable to the order of the depositor or to the bearer, is the subject of a gift either inter vivos or causa mortis (Thornton on Gifts and Advancements, § 323; Brooks v. Brooks, 12 S. C. 422); and that while a donor can not make a valid gift causa mortis of his own check, yet he may of a check payable to himself and drawn by a stranger. Thornton on Gifts and Advancements, § 320. Lord Romilly, Master of Rolls, in the early case of Amis v. Witt, 33 Beavan, 619, said: "When a man on his death bed gives to another an instrument such as a bond or promissory note, or an I. O. U., he gives a chose in action, and the delivery of the instrument confers upon the donee all the rights to the chose in action arising out of the instrument." Pomeroy, in his Equity Jurisprudence, Vol. 3, § 1148, collating all the authorities, states the law as follows: "All kinds of personal property, using the word in its broad, mercantile sense, as equivalent to assets, which are capable of manual delivery, and of which the title, either legal or equitable, can be transferred by delivery, may be the subject-matter of a valid donatio causa mortis. . .

The rule is now well established that all things in action which consist of the promises or undertakings of third persons, not the donor himself, of which the legal or equitable title can pass by delivery, may be the subject of a valid gift, including promissory notes, bills of exchange, checks, bonds, mortgages, saving banks' pass-books, certificates of deposit and the like; and it is settled that a valid donation of negotiable instruments may thus be made without endorsement." The case of Basket v. Hassell, 107 U. S. 602, is that of a certificate of deposit, where the court says: "That the delivery of the certificate of deposit, such as that described in the record in this case, might constitute a valid donatio causa mortis does not admit of doubt." And it makes no difference that the certificate of deposit or certified check or promissory note, although payable to the order of the donor, has not been endorsed by him. If such chose in action has in fact been delivered to the donee by the donor, and intended thereby as a gift, the donee acquires an equitable title which is complete and can be enforced. 20 Cyc. 1238, and many cases cited in the notes.

When John McCullough delivered the certificate of deposit, issued by the bank in Texas and payable to his order, to his brother Enoch, accompanied by the declaration that he desired his brother, out of its proceeds, to pay his funeral expenses and the expenses of his last sickness, and wanted him to have the balance of the proceeds, the gift causa mortis to his brother was complete. There was an equitable assignment of the certificate of deposit to the donee, although the donor at that time failed to indorse it; and if the situation had remained unchanged, the title of his brother Enoch to the certificate of deposit would clearly have been upheld as an equitable assignment of the certificate and the proceeds thereof. What took place subsequently did not divest the title of Enoch McCullough, and was simply a means adopted by John, his brother, of more effectually completing the gift. When he acted upon the suggestion of Dr. Goldin and, by consent of his brother Enoch, indorsed the certificate of deposit, and had the certificate of deposit placed to his credit with the Temple Banking Company, and subsequently gave to his brother Enoch his own check for the full amount of the certificate, it did not change the character of the gift or affect its validity; and the individual check of the donor and the delivery of the same to the donee, with the res gestæ

of the transaction, amounted to an equitable assignment of the certificate of deposit as well as of the proceeds thereof. Indeed, it has been held that the actual delivery of the certificate of a special deposit may be dispensed with if the check be given upon the bank for the exact amount (or perhaps a part of it) described in the certificate, and specifying that it is for the amount therein described. Thus, a donor had in a bank a special deposit, and, two hours before his death, signed a check directed to the bank, properly dated and drawn as follows: "Pay to the order of R. K. the amount of deposit and charge to my account." No amount was designated, and the donor had no sum of money in the bank, except that on special deposit. He delivered the check to the donee with proper words of gift. The gift was deemed valid, upon the ground that the check operated as an equitable assignment of the certificate, and, consequently, an assignment of the fund. Thornton on Gifts, §285; Kurtz v. Smither, 1 Den. (N. Y.) 399. In the case sub judice, the facts constituting the gift are much stronger; for here the certificate of deposit was itself actually delivered by the donor to the donee, with proper words of gift; and, if possible, to make the gift more complete, the donor subsequently, and for the express purpose of more effectually carrying out his intention as to the gift, made and delivered to the donee his own check for the fund represented by the certificate of deposit.

A case very much in point is that of Duffin v. Duffin, 44 Law Rep. Chan. Div. 76. "A testator who held a banker's deposit note for £580, in his last illness and very shortly before his death, took out the note, filled in, and signed upon a stamp and form of check indorsed on the note, 'Pay self or bearer £580 and interest,' and handed the document to a relation, . . telling her that she was to give it back to him if he recovered, and, if not, she would be all right. Held, that there was a valid donatio causa mortis, for that, assuming a donatio causa mortis of a check not presented in the drawer's life time to be invalid, the intention here was not merely to give the check, but the deposit note; that a deposit note is a good subject of donatio causa mortis, and that the gift was not defeated by the giving the check along with the note." So in the present case, the gift of the certificate of deposit (which has universally been held to be a good subject of a donatio causa mortis), with proper words of gift at the time of delivery, was not defeated by

the subsequent giving of a check, although the check was not presented until after the death of the donor. The learned judge, in Duffin *v.* Duffin, supra, uses this language: "It is said that here there was no good donatio causa mortis, because a man can not make such a gift of his own check. I will assume that to be correct, though I think it may some day require consideration, but assuming it to be correct, I think it does not dispose of the present case. There is indeed upon the deposit note a form of check which has been filled up, stamped and signed, but what is it that is given, the deposit note or the check? Substantially the former; and the authorities are all in favor of the view that a valid donatio causa mortis may be made of a deposit note." "I think it was clearly the intention of the donor not to give merely a check, but to give the deposit note." Without multiplying authorities, we think that the evidence in this case, according to every decision that we have been able to find, clearly establishes a valid gift causa mortis. Indeed, we think it is clearly shown by the facts, under the provisions of the Civil Code, §3574. The gift was made in contemplation of death by a person during his last illness. It was intended to be absolute only in the event of death, and was perfected both by the actual delivery of the certificate of deposit, and symbolic delivery of the money represented by the certificate and proved by the uncontradicted testimony of five witnesses.

2. The burden was on the administrator in this case to show that the gift was either made at the time when the donor was incapable, on account of mental infirmity, of making a gift, or that it was procured from him by fraud or undue influence. The general rule is, that if the donor has sufficient mental capacity to comprehend the transaction, his gift will be valid, and that mere mental weakness will not authorize the court to set aside an executed gift, if such weakness does not amount to an inability to comprehend the transaction. Thornton on Gifts, §442. There was no evidence in this case of any mental unsoundness when the gift was made. The testimony of the physician and of the other witnesses who saw the donor at that time, was that he was entirely rational, and that there was no indication of mental weakness. The evidence that the donor, a few days before his death, was generally unconscious, both from the progress of the disease and the effect of opiates, is not sufficient to show any mental unsound-

ness, for this condition did not exist at the time the gift was made, and only indicated physical weakness, and that mental unconsciousness which, by happy dispensation of providence, usually attends the near approach of death. There is in the record no evidence whatever indicating any fraud or undue influence exerted by the brother, the donee, or by the physician, or by the family. The letters written by the donee's brother from Texas some time previous, indicating a friendly disposition towards his grandniece, were entirely insufficient to show any ill feeling for his brother, especially in view of the fact that he sought his brother's home and care when he felt the need of both.

We think, on the controlling questions in this case, the verdict directed by the court was demanded by the evidence. In this view, the other questions made in the motion for a new trial become wholly immaterial.                              *Judgment affirmed.*