## In re Estate of A. L. Stockham.

Linnie Williamson Van Horn et al., Appellants, v. Edgar L. Stockham et al., Appellees.

GIFTS: Delivery to Third Party. The act of a donor in handing the subject-matter of a gift to another person for the use and benefit of the donee, with the intent on the part of donor to relinquish all control over the property and to vest the title thereof in the donee, constitutes an effective delivery to donee.

ASSIGNMENTS: Mode and Sufficiency—Federal Bonds. United States treasury regulations, authorized by Federal statute, and indorsed on the back of registered bonds of the Federal government, to the effect that said bonds can be transferred only by a written assignment *which is witnessed before one of certain named officials,* are designed to prescribe the form of transfer which will be recognized by the treasury officials in making Federal registration, and are not designed to prohibit an actual transfer of title by an assignment *not so witnessed.*

GIFTS: Validity. A gift made in contemplation of suicide, but executed by delivery, is valid.

*Appeal from Davis District Court.*—Seneca Cornell, Judge.

February 7, 1922.

Rehearing Denied May 8, 1922.

This is an appeal from the finding and order of the court below upon objections to the final report of an administrator. The facts are fully stated in the opinion.—*Affirmed*.

*John F. Scarborough*, for appellants.

*Payne & Goodson* and *Buell McCash*, for appellees.

Stevens, C. J.—I. This is a proceeding in probate, growing out of the final report of the administrator of the estate of A. L. Stockham, to determine the ownership of certain registered United States gold bonds, issued and sold by the secretary of the treasury under the provisions of an act of Congress approved September 24, 1917 (Section 6829ii, United States Compiled Statutes), and of ten war savings stamps of the face value of $5.00 each. The facts and transactions out of which the controversy arose, briefly stated, are as follows: A. L. Stockham, a resident of Davis County, who at the time of his death was unmarried and without issue, died intestate on August 17, 1919. Death resulted from voluntary drowning. His sole surviving heirs at law are appellants, who are the daughters of a deceased sister, and appellees, who are the sons and daughter of a deceased brother.

On July 26th preceding his death, he assigned certain of the bonds and savings stamps in controversy, consisting of five gold bonds of the denomination of $500 each, seven gold bonds of the denomination of $1,000 each, four gold bonds of the denomination of $400 each, ten United States war savings stamps of $5.00 each, to appellees separately, by executing the blank assignment on the back of each of the bonds before a notary public. Before going to the office of the notary, he carefully separated the bonds into three packages, placing each package in a separate envelope, as follows: In one envelope he placed bonds to the amount of $3,000, together with all of the war savings stamps and a receipt from a bank for $100, acknowledg-

ing the payment to it of that amount for the purchase of a gold bond of that denomination. These bonds and the savings stamps he assigned to Edgar Stockham. In another envelope he placed bonds amounting to $4,000. These he assigned to Louie Graves. In the third, he placed bonds amounting to $3,000, which he assigned to Ray Stockham. After each of the bonds and the war savings stamps had been assigned, he replaced them in the separate envelopes from which they were taken, and left the office. The form of the assignment on the back of each of the bonds, after the execution thereof, except as to the name of the assignee, is as follows:

"TRANSFER

"For value received I assign to
"Edgar Stockham of Bloomfield, Iowa,
"the within registered bond of the United States and hereby authorize the transfer thereof on the books of the United States Treasury Department.
"[Signed]    A. L. Stockham

"Personally appeared before me the above named assignor, known or proved to me to be the payee of the within bond, and signed the above transfer acknowledging the same to be his free act and deed. Witness my hand, official designation and seal.
"[Signed]    A. C. Lester
"Notary Public
"(Seal)
"Dated at Bloomfield, Iowa.
"July 26th, 1919."

Nothing further is known concerning the bonds until early the morning of August 17th, when, as appellees claim, they were all taken from his trunk by the decedent and delivered to Edgar Stockham, for the purpose of making a voluntary gift thereof to him, his brother Ray, and his sister Louie. This transaction occurred at the home of Edgar, where deceased, who was about 65 years of age, and in ill health, had resided for about three

weeks. Both Edgar Stockham and Alta, his wife, were per-
mitted to testify to all that was said and done between deceased
and Edgar on the morning in question. According to the testi-
mony of Mrs. Stockham, deceased, shortly after leaving the
breakfast table, went into the room occupied by him, and where
the trunk was kept, and requested Edgar to come in. He re-
sponded at once. The witness testified that she sat within four
feet of the door, which was open, leading into decedent's room,
and that she took no part in the conversation, but saw and
heard all that transpired between deceased and her husband.
According to her testimony, when her husband entered the room,
decedent was standing by his trunk, which was open. The
packages containing the bonds were lying in the bottom of the
trunk. Decedent picked them up and handed them to Edgar,
at the same time giving him the key to the trunk, and telling
him to retain the bonds assigned to him and to deliver the others
to Ray and Louie, as assigned. This Edgar promised to do.
After some further conversation about the matter, Edgar, with-
out returning the bonds to his uncle, placed them in the trunk,
and locked it with the key given him by his uncle. Decedent
then requested Edgar to summon a neighbor to shave him.
While Edgar was absent, decedent went to the barn, wrote a
note, as follows, "You will find me in the old well," and pinned
it to a jacket, where it was shortly afterwards discovered. A
search resulted in the finding of the body in an old well. An
inquest was held by the coroner, who requested Edgar to give
him all papers of the deceased. Edgar thereupon unlocked the
trunk, took out the envelopes containing the bonds, and gave
them to him. The coroner delivered the bonds and stamps to
the clerk of the district court. The only other asset of the estate
was $1,369.06, which was on deposit in the National Bank of
Bloomfield. On the same day on which the bonds were assigned,
decedent also made out and signed a check drawn on the above
named bank, payable to Edgar Stockham, but left blank as to
date and amount. Shortly after the funeral, Edgar Stockham
consulted an attorney, who procured the appointment of an
administrator, upon a petition signed by Edgar for the estate.
On or about September 9, 1920, the administrator filed his final

report, from which it appears that the funeral and other expenses, including the collateral inheritance tax, were somewhat in excess of the cash on hand; but he collected interest to the amount of $427.38 on the bonds. The net balance remaining in the hands of the administrator, as shown by his final report, is $9,831.24. The administrator asks authority to divide the property in his hands among the appellants and appellees, and that he be discharged as administrator. Appellees filed proper objections to the proposed distribution by the administrator, and asserted absolute ownership to the bonds, in accordance with the written assignments on the back thereof.

Shortly after the administrator was appointed, the bank delivered to him a bond for $100, to which the receipt showed decedent entitled. The court below found that there was a completed gift to appellees of all of the bonds except the one for $100, and ordered the administrator, after paying the costs and expenses of administration, to turn same over to the donees.

The grounds upon which appellants deny the claim of appellees to the bonds and savings stamps are: (a) That they were not delivered by deceased to donees during the lifetime of the donor; (b) that the evidence relied upon by appellees to show delivery is incompetent and insufficient for that purpose; (c) that, if the bonds were delivered to Edgar, it was as the agent of the donor, which agency was terminated by the death of the donor before the bonds were actually delivered to Louie and Ray, and that the delivery to Edgar was ineffectual to pass title to them; (d) that the attempted assignment on the back of the bonds is wholly without effect, because same was not witnessed by anyone authorized to witness same, under the regulations of the treasury department and the provisions printed on the back of the bonds; (e) that the attempted gift of the bonds and savings stamps was in contemplation of suicide, and therefore void; (f) that the attempted disposition of the bonds and savings stamps in the manner shown was testamentary in character, and that, as same was executed without the necessary legal formalities, nothing passed to appellees.

The sole evidence relied upon to show delivery is the testimony of Edgar Stockham and Alta, his wife. Prompt objection,

was interposed, under Section 4604 of the Code, to the competency of Edgar to testify concerning the transaction of August 17th. The court ruled that Edgar was incompetent to testify on his own behalf, but held that his testimony was admissible on behalf of his brother and sister. The court, however, at the conclusion of the trial, made a finding of facts, in which it is definitely stated that no consideration or weight was given to the testimony of Edgar, and that the decision of the court rested wholly upon the testimony of Mrs. Stockham. The admission of Edgar's testimony, if incompetent, was, therefore, without prejudice to appellants. Mrs. Stockham testified that she took no part in the conversation or in the transaction. Under the repeated decisions of this court, she was a competent witness. Although it is urged by counsel for appellants that the delivery of the bonds and savings stamps is not made out by the proof, the court so found, and as its finding is based upon substantial evidence, it is conclusive upon this point.

Assuming, therefore, that the transaction and conversation between Edgar and deceased occurred, as claimed by her, the question naturally arises: Was the delivery of the bonds bearing the written assignment of deceased to Edgar Stockham for the use and benefit of himself and other appellees, a sufficient delivery to pass title to them? It is conceded in the record that neither Louie Graves nor Ray Stockham was present when the bonds were handed to Edgar, and that they did not know of the assignment or delivery of the bonds to Edgar until after the death of the donor. The rule seems to be settled in this state, as well as in other jurisdictions, that the delivery of personal property by one person to another for the use and benefit of a third party, under such circumstances as to indicate that the party delivering same relinquishes all control thereover, with the intention of vesting title in such third party, may be as effectual to pass title as manual delivery thereof to the donee himself. *Hogan v. Sullivan,* 114 Iowa 456; *Larimer v. Beardsley,* 130 Iowa 706; *Jones v. Nicholas,* 151 Iowa 362; *In re Fenton's Estate,* 182 Iowa 346; *Tucker v. Tucker,* 138 Iowa 344. See, also, *Emery v. Clough,* 63 N. H. 552 (4 Atl. 796).

1. GIFTS: delivery to third party.

It is too manifest for argument that, at the time the decedent handed the bonds and savings stamps to Edgar, he intended to make a gift thereof, and to pass title to the respective parties named in the assignment as absolutely as though he had delivered them personally into their hands. The only purpose of the assignment, in the light of what followed, was to pass title to the bonds to the assignees. The law presumes the acceptance of a valuable voluntary gift. By the delivery of the bonds to Edgar for the benefit of the donees named, he became, under the authorities cited, a trustee or agent of the donees, and not the agent of the donor, and therefore the death of the latter did not terminate the agency. It is true, under the law of this and other jurisdictions, that, to constitute an irrevocable gift of personal property by one to another, there must be an actual or symbolical delivery thereof, with the intention of passing title to the donee. Nothing further must be required, to effectuate and carry out the intention of the donor. *Abegg v. Hirst*, 144 Iowa 196; *Dolph v. Wortman*, 185 Iowa 630; *Trubey v. Pease*, 240 Ill. 513 (88 N. E. 1005); *McCartney v. Ridgway*, 160 Ill. 129 (43 N. E. 826); *Steele v. Gatlin*, 115 Ga. 929 (42 S. E. 253); *In re Estate of Smith*, 144 Pa. 428 (22 Atl. 916).

"Where something remains to be done in carrying out the donor's intent, no matter how unequivocal the intent itself may be, the gift is not complete; for, so long as the contemplated action is not taken, it is to be presumed that the donor intends to retain the title." *Abegg v. Hirst*, supra.

II. We come now to consider the vital question in the case, which is: Did the assignment of the bonds by the owner thereof in the form provided on the back of said bonds operate, as between the parties to this action, to transfer title to the assignees, although not witnessed by one designated and authorized by the secretary of the treasury to witness same? The requirements of the treasury department, which were issued in pursuance of authority conferred on the secretary of the treasury by an act of Congress approved September 24, 1917, for the transfer of registered bonds, are printed on the back thereof, and are as follows:

2. ASSIGNMENTS: mode and sufficiency: Federal bonds.

"In order to effect the transfer of the within registered

bond the registered owner or someone duly authorized to act for him, must go before one of the officers authorized by the secretary of the treasury to witness assignments, must establish his identity, and in the presence of such witnessing officer must execute an assignment using the above form. The officers authorized to witness assignments of registered bonds of the United States are the following: Judges and clerks of United States courts, United States district attorneys; collectors of customs; collectors of internal revenue; assistant treasurers of the United States; executive officers of Federal reserve banks (and their branches), of national banks, and of other banks and trust companies incorporated under the laws of any state, authorized by such bank or trust company to perform acts attested by the seal of such bank or trust company. Assignments may also be made at the treasury department. Notaries public are not authorized to witness assignments. * * * In all cases, the officer before whom the assignment is executed and acknowledged must add his official designation, residence, and seal, if he has one, same being affixed to the bond. When the assignment is made by a corporation, the corporation must be named as the assignor; when by a guardian, trustee, executor, administrator, an officer of a corporation or by anyone in a representative capacity, proof of his authority to act must be produced to the officer before whom the assignment is made and must accompany the bond. Assignors must be identified to the satisfaction of the officer before whom the assignment is made as known and responsible persons.''

Was it intended by the treasury department that the provision of the bond quoted above should operate as a prohibition against the assignment of the bond by the owner for the mere purpose of passing title to another, and to prevent the passing of title to an assignee, or is it to be treated as a regulation prescribed by the secretary of the treasury for the better convenience and security of the department and of the owner of the bond in the transfer and negotiation thereof, and to prevent one in possession and not entitled to the proceeds from receiving same? These bonds evidence an obligation of the government, and are, in form, an absolute promise to pay at maturity, to-

gether with interest thereon, as therein provided. Unless prohibited by the language quoted, the written assignment of the donor, accompanied by the manual delivery of the bonds, was as effectual to pass title as the assignment of any form of a chose in action. Many obligations and choses in action, such as notes, bonds, bank certificates, insurance policies, and certificates of stock, have been held to be the proper subject of a gift, without the formality of a written assignment. *In re Estate of Wearin,* 167 Iowa 535; *Tucker v. Tucker,* supra; *Smith v. Meeker,* 153 Iowa 655; *Polley v. Hicks,* 58 Ohio St. 218 (50 N. E. 809); *Baker v. Moran,* 67 Ore. 386 (136 Pac. 30); *Philpot v. Temple Banking Co.,* 3 Ga. App. 742 (60 S. E. 480); *Teague v. Abbot,* 51 Ind. App. 604 (100 N. E. 27); *Opitz v. Karel,* 118 Wis. 527 (95 N. W. 948); *Commonwealth v. Crompton,* 137 Pa. 138 (20 Atl. 417); *First Nat. Bank v. Holland,* 99 Va. 495 (39 S. E. 126); *Phinney v. State,* 36 Wash. 236 (68 L. R. A. 119); *Heidel v. Benedict,* 61 Minn. 170 (31 L. R. A. 422); *Telford v. Patton,* 144 Ill. 611 (33 N. E. 1119); *Herbert v. Simson,* 220 Mass. 480 (108 N. E. 65); *Talbot v. Talbot,* 32 R. I. 72 (78 Atl. 535); *Gledhill v. McCoombs,* 110 Me. 341 (86 Atl. 247); *Dinslage v. Stratman,* (Neb.) 180 N. W. 81; Thornton on Gifts, Sections 270, 271.

It is true that many of the above named cases involved only gifts of corporate stock; but the discussion of the questions involved is exhaustive and instructive. It must be observed that this is a controversy between the heirs at law of deceased who are the children of a deceased brother, and the assignees of the bonds, who are the children of a deceased sister, and also heirs at law of the deceased. Appellants do not stand in the relation of creditors or purchasers of the bonds, and have no other interest therein than as such heirs at law. The sole question is: Did A. L. Stockham have title to the bonds and savings stamps at the time of his death? If not, then appellants have no claim thereto, and it would make no difference what difficulty or inconvenience appellees may have to encounter with the secretary of the treasury before obtaining payment thereof. Surely, the bonds have not been rendered uncollectible because of the failure of the owner to have the assignment properly witnessed, nor

have they ceased to be valid and binding obligations of the government. Is there not a clear distinction to be recognized between an assignment of a registered bond containing the provisions quoted above, for the purpose of effecting a transfer that will meet the requirements of the secretary of the treasury for the registration thereof, and an assignment intended only for the purpose of transferring title to an assignee? We are of the opinion that such distinction does exist, and that the assignments in question are sufficient to pass title to the assignees named. It may be that the assignees, under other circumstances than those shown in this case, would have some difficulty with the secretary of the treasury in obtaining interest payments and a settlement of the bonds at maturity, but this does not concern appellants, nor affect the validity of the assignments. So far as we are advised, no similar question has arisen affecting bonds of the series in question nor involving similar requirements of the secretary of the treasury; but we are satisfied that the language of the quoted provision should not be so construed as to impose an absolute prohibition upon the right of the owner to transfer title to the bond by assignment on the back thereof in the form provided, although not witnessed in the manner or by a person authorized by the secretary of the treasury. The bonds and savings stamps, as already stated, are in the possession of the administrator, and must be turned over to the proper assignees, under the order of the court, before the administrator can be discharged. A further order should be entered by the court below, directing the administrator to make a proper assignment of the bonds before delivering the same to the assignees. The foregoing suggestion is not inspired by the thought that something necessary to a completion of the gift was omitted by the donor. This the court could not, under the authorities cited, supply. An assignment by the administrator is not essential to the passing of title to the bond, but is for the purpose of facilitating the payment and collection of interest and of the principal at maturity, or when called by the secretary of the treasury for redemption.

III. It is also argued by counsel for appellants that the attempted gift of the bonds and savings stamps is void for the

further reason that it was done in contemplation of suicide.

**3. GIFTS: validity.** Whether decedent, at the time the assignment was made, contemplated suicide does not appear; but the fact that he voluntarily drowned himself within an hour after he delivered the bonds to Edgar Stockham would tend to indicate that the act was then contemplated. We are not, however, impressed with the seriousness of this contention on the part of counsel.

Numerous questions argued by counsel are touched upon herein only indirectly, but we deem the foregoing discussion sufficient to dispose of the controlling issues in the case.

It is our conclusion, and we hold, that there was sufficient delivery to appellees of the bonds bearing the assignment of decedent to pass title thereto, and that they were, at the time of the death of the donor, the absolute owners thereof. As the money in the bank was required to pay funeral and other expenses of administration, we need give no consideration thereto. The finding and judgment of the court below are—*Affirmed*.

WEAVER, PRESTON, and DE GRAFF, JJ., concur.