No. 9768. SEPTEMBER 14, 1933.

RAGAN *v.* NATIONAL CITY BANK OF ROME, administrator, *et al.*

No. 9458. SEPTEMBER 15, 1933. REHEARING DENIED SEPTEMBER 26, 1933.

*Barry Wright* and *L. P. Goodrich,* for plaintiff.

*Wright & Covington, John W. Bale,* and *James F. Kelly,* for defendant.

RUSSELL, C. J. (After stating the foregoing facts.) R. Tippen Ragan executed a will by the terms of which he devised all of his property to his grandmother (his mother's mother), Mrs. Julia L. Tippen. He named no other legatee. He appointed his grandmother as executrix, and imposed no limitation or restriction upon her disposition of his property. About a year later he died. His will was probated in common form. A short time after his death his grandmother executed a will devising all her property to Mrs. M. F. Mulky, Mrs. A. E. Paris, and Mrs. Minnie Bobo as her sole legatees, devisees, and beneficiaries, and nominated the National City Bank of Rome as her executor. The bank as executor was proceeding to probate both wills in solemn form—the will of R. Tippen Ragan as administrator de bonis non cum testamento annexo, and the will of Mrs. Julia Tippen as executor. At this stage Miss Anna Ragan filed the present action. She is a sister of Ragan's father, and Mrs. Tippen was the mother of Ragan's mother. Ragan had no brother or sister, and never married. Miss Anna Ragan is the only surviving paternal aunt, and he left surviving no uncle or aunt upon his mother's side. It thus appears from the petition that Mrs. Julia L. Tippen was his next of kin, and that had he died without a will his estate would have fallen to his grandmother under the rules of distribution. The petition is predicated upon an alleged oral agreement, in which petitioner is alleged to have been present and to have participated, by which R. Tippen Ragan agreed to devise his entire estate by will to his grandmother, upon her promise and agreement that, should she survive said R. Tippen Ragan, she in return would execute a will devising at her death to the petitioner, Miss Anna Ragan, all of the estate devised to her by R. Tippen Ragan remaining in her hands at the time of her death. The petition alleges that in violation of this agreement

Mrs. Tippen failed to make any provision for petitioner, but on the contrary devised her estate, including the bequest from R. Tippen Ragan, to the parties already mentioned. The petitioner prayed that the probate of the two wills be restrained by injunction, and that both wills be reformed—the will of R. Tippen Ragan so as to devise to his grandmother only a life-estate, with remainder in fee to Miss Anna Ragan, and the will of Mrs. Julia L. Tippen so as to devise to Miss Anna Ragan whatever remained at her death of the estate of R. Tippen Ragan which had been devised to her.

It is not necessary to deal with all the grounds of demurrer, for reasons now to be stated, because we are of the opinion that the court did not err in dismissing the petition. The allegations amount merely to a statement that Mrs. Tippen failed to perform her promise as to the disposition of her property. The promise alleged to have been made was not based upon any consideration flowing from the plaintiff. It appears that R. Tippen Ragan lived with his grandmother, and that circumstance as well as the close relationship would seem to render the disposition of his property perfectly natural, and to transmute several of the allegations of the petition into mere conclusions of the pleader, unsupported by any facts authorizing these conclusions. The allegations are insufficient to establish an implied trust in favor of the plaintiff. They show only that the alleged contract was between R. Tippen Ragan and his grandmother, to which the plaintiff was not a party, and in which no consideration moved from the plaintiff. Consequently there was no such privity as would authorize an action by the would-be beneficiary. Upon the principles just stated the rulings of this court in *Sterling* v. *Sterling*, 12 *Ga.* 201, and *Shropshire* v. *Rainey*, 150 *Ga.* 566 (104 S. E. 414), seem to be controlling. In the *Sterling* case it was said: "The doctrine is thus stated by Judge Story: 'Uses or trusts to be raised by any covenant or agreement of a party in equity, must be founded on some meritorious or some valuable consideration; for courts of equity will not enforce a mere gratuitous gift (*donum gratuitum*) or a mere moral obligation. Hence it is, that if there be a mere voluntary executory trust created, courts of equity will not enforce it. *And upon the same ground, if two persons, for a valuable consideration, . . covenant to do some act for the benefit of a third person, who is a mere stranger to the consideration, he can not enforce the covenant against the two, although*

*each one might enforce it against the other.* But it is otherwise where the use or trust is already created, and vested or otherwise fixed on the *cestui que trust;* or where it is raised by a last will or testament.' " In the *Shropshire* case it was said: " 'In England it is held, subject to the exceptions hereafter stated, that where two persons make a contract in which one of them promises to confer benefits upon a third party, the latter can not sue upon the contract, at law or in equity, for the money or other benefit which it is promised he shall receive. The same doctrine, with some differences as to the exceptions, has been held, in the absence of a statute, in some of the United States, and in some of the Federal cases. . .' In this State the English rule, in effect, was adopted in our first Civil Code (1863), § 3181, which section has appeared in all of our subsequent codes, and is now embodied in the Civil Code of 1910, § 5516, which is: 'As a general rule, the action on a contract, whether express or implied, or whether by parol or under seal, or of record, must be brought in the name of the party in whom the legal interest in such contract is vested, and against the party who made it in person or by agent.' This general rule has been applied by this court in a number of cases, among them, *Empire State Ins. Co.* v. *Collins,* 54 *Ga.* 376; *Pfeiffer* v. *Hunt,* 75 *Ga.* 513; *Gunter* v. *Mooney,* 72 *Ga.* 205; *Austell* v. *Humphries,* 99 *Ga.* 408 (27 S. E. 736) ; *Hawkins* v. *Central Ry. Co.,* 119 *Ga.* 159 (46 S. E. 82) ; *Guthrie* v. *Atlantic Coast Line R. Co.,* 119 *Ga.* 663 (46 S. E. 824) ; *Cooper* v. *Claxton,* 122 *Ga.* 596 (50 S. E. 399) ; *Fairchilds* v. *Hartsfield,* 144 *Ga.* 348 (87 S. E. 285). In *Gunter* v. *Mooney,* supra, it was held: 'A woman and another entered into a written agreement on July 15, 1862, whereby the other party was to take the son of the woman, feed and clothe him, and give him a common-school education, and a horse, bridle, and saddle when he became twenty-one years of age; the son became of age in December, 1874, and brought suit in 1880, alleging a breach of the covenant, in that the person so agreeing had failed to give him a common-school education: *Held,* that the plaintiff could not maintain an action of covenant on the agreement set out, he not being a party or privy to the same, but a mere stranger, and the case was properly dismissed on demurrer.' . .

"The facts alleged in the petition in the case at bar do not bring it within any of the exceptions heretofore recognized in any of the

decisions of this court. In this case the suit is brought by the beneficiary under an alleged contract made between her father, Jones, and Mrs. Barksdale, the contract not vesting in petitioner any legal interest; and to hold that she could maintain a suit would be in direct conflict with the provisions of the Civil Code, § 5516, above quoted. There can be no reason why an exception to the general rule declared by our statute should be made in her favor, in view of the allegations of her petition. To create an exception in her favor would be virtually to abrogate our statute, and to hold that a beneficiary of a contract made between two third persons could sue the promisor thereon, though the beneficiary was in no wise connected with such contract, except to receive as a stranger a benefit thereunder. It is true that the petitioner in the case at bar is the daughter of the promisee in the contract, but, as we have already seen, under the English rule that fact does not constitute an exception to the general rule; and while in Massachusetts it was formerly recognized as an exception to the general rule, such former decisions have been reviewed and overruled by the highest court of that State. The petitioner in the case at bar, as we have seen, was an utter stranger to the contract between her father, Jones, and Mrs. Barksdale—she furnishing none of the consideration—her relation or status was in no wise changed or affected, nor was any trust created for her benefit under the terms of the contract; for if the promisor, Mrs. Barksdale, became under the terms of this contract the trustee, or quasi trustee, of the petitioner, so as to entitle her to sue for the enforcement of the contract, then in every instance, without exception, where two persons make a contract in which one of them promises to confer a certain benefit upon a third party, the promisor would become the trustee, or quasi trustee, for the beneficiary, and therefore the latter could sue to enforce the agreement, and the general rule could have no application, and would be entirely abrogated."

Of course specific performance has been granted in a number of cases of mutual wills; but, so far as we are aware, in each of these cases some consideration flowed from the plaintiff to the deceased. Under the rulings of this court equity will not interfere with the duty of an executor to proceed with the probate of a will. In *Adams* v. *Johnson,* 129 *Ga.* 611-613 (59 S. E. 269), this court held: "It is the duty of the nominated executor to offer the will for probate,

and equity will not enjoin the performance of this duty." In *Israel* v. *Wolf*, 100 *Ga.* 339 (28 S. E. 109), this court held: "It being within the power of the ordinary of any county to compel the filing in his office of any paper purporting to be the last will and testament of a deceased person who at the time of his death resided in such county, and the court of ordinary having original and exclusive jurisdiction in the first instance of the probate of all wills, the superior court in the exercise of its equity powers has no jurisdiction to enjoin the custodian of an alleged will from offering it for probate; nor to decree, for any reason, the cancellation of an alleged will upon which no action has ever been taken by the court of ordinary."

The next question which arises is whether the laws of Georgia authorize or will permit the reformation of a will. We think not. To allow these wills to be reformed would be to make for each of the testators, after death, a new and different disposition of their property from that expressed by these testators when in life. It was held in *Willis* v. *Jenkins*, 30 *Ga.* 167, that "A will can not be reformed by making additions to it, because the whole will must be in writing *ab origine*." In the opinion it was said: "Can this will be reformed by striking out and inserting? We think not. There is no doubt that on a different issue, to wit, the issue of *devisavit vel non*, and [that?] parts of the propounded paper to which the testator had not assented ought to be rejected; but to allow the insertion of anything into it, upon *parol proof*, would be to set aside the law which requires the will—the whole will—to be in writing. . . *Contracts* which are within the statute of frauds are allowed to be reformed by inserting such things as may have been omitted from the writing through fraud, mistake, or accident; but contracts and wills are placed on very different footings by that statute. Wills must be wholly in writing *ab origine;* contracts need not be. . . But the statute [of frauds] affects the two very differently. Under the conjoint operation of the rule and the statute, the doctrine with respect to contracts is, that if the parties leave a written vestige, this may serve as a skeleton on which parol evidence can hang such lacking components . . as may have been withheld by fraud, mistake, or accident. But not so with a will. The statute demands that the whole of it shall be in writing." Citing 1. Jarman on Wills, 349. In *Smith* v. *Usher*, 108 *Ga.* 231, 233 (33

S. E. 876), it was said: "Wills must be in writing and executed according to prescribed formalities, and a failure to dispose of property can not be supplied by showing sayings and statements of the testator that he desired or intended to dispose of it in a certain way or that he understood that the will disposed of it in a way different from that expressed in the will. *Willis v. Jenkins,* 30 *Ga.* 167; *Armistead v. Armistead,* 32 *Ga.* 597; *Phillips v. Crews,* 65 *Ga.* 274; *West v. Randle,* 79 *Ga.* 28 [3 S. E. 454]; *Erwin v. Smith,* 95 *Ga.* 699 [22 S. E. 712]." See *Oliver v. Henderson,* 121 *Ga.* 836 (49 S. E. 743, 104 Am. St. R. 185). In *Hertz v. Abrahams,* 110 *Ga.* 724 (36 S. E. 409, 50 L. R. A. 361), where only the construction of a will was involved, and where if a term in the will were given a certain construction it would be necessary to add words, it was held: "This, of course, we have no legal right or power to do, as we must construe the words, as we find them in the will, according to the rules of interpretation adopted by the English courts for centuries and adhered to by many decisions of this court. To disregard these rules of interpretation at this late day 'would not only frustrate the great landmarks of property but would introduce a latitude of construction boundless in its range and pernicious in its consequences.'" If it be such an evil to supply words not used in the will by the testator, how much more disastrous would be the consequences if the testator's will could be reformed so as to speak a disposition of his property of which his last will and testament gives no hint! In *Crawley v. Kendrick,* 122 *Ga.* 183 (2) (50 S. E. 41, 2 Ann. Cas. 643), Chief Justice Simmons, delivering the unanimous opinion of the court, held: "A plain, written legal will can not be reformed by making additions to it." Redfearn in his work on Wills and Administration of Estate, 238, lays down the rule that "No court of law or equity can reform a will." Thus it is established in Georgia upon principle and by authority that the last will and testament of a person, which has been reduced to writing and executed and attested as required by law, and which is not in conflict with any law of the State, can not be reformed. The court did not err in sustaining the demurrer and dismissing the petition.

*Judgment affirmed. All the Justices concur.*

ATKINSON, and BELL, JJ., concur in the result.