GUEST, administratrix, *v.* STONE *et al.*

No. 16783. OCTOBER 12, 1949. REHEARING DENIED NOVEMBER 18, 1949.

*Milton C. Grainger,* for plaintiff.

*J. H. Highsmith, C. W. Heath,* and *Gordon Knox Jr.,* for defendants.

ATKINSON, Presiding Justice. (After stating the foregoing facts.) Whatever might have been the intention of the deceased or the understanding of Mrs. Stone, a solution as to the legal effect of the foregoing transactions will best be determined by an application of the process of elimination.

The original deposit of $2000 with the notation, "Mrs. Lessie Stone beneficiary in case of death," and signed by the deceased, standing alone, is clearly testamentary, and not being executed with the formality required of a will, would convey no interest therein to her.

We next consider the circumstances of the original deposit along with the subsequent fact that the deceased gave the pass book and blank check to Mrs. Stone, stating, "If I happen to crap out, it is all yours," and, "If you need any money while I am gone, go to the bank and get it."

The evidence negatives the fact that this transaction occurred during the last illness or while the deceased was in peril of death, and therefore does not meet the requirements of a gift causa mortis under the Code, § 48-201.

Nor would it constitute a valid gift inter vivos. We quote from *Drake* v. *Wayne,* 52 *Ga. App.* 654 (184 S. E. 339), bottom of page 659: " 'A delivery of property subject to be reclaimed by the donor at any time prior to his death, or where full control or power over the property or fund vests in the donee only after the death of the donor, does not constitute a valid gift inter vivos.' 20 Cyc. 1211, § 2. A gift inter vivos 'operates, if at all, in the donor's lifetime, immediately and irrevocably; it is a gift executed; no further act of parties, no contingency of death or otherwise, is needed to give it effect.' 20 Cyc. 1192. 'To make a valid gift, there must be a present intention to give, and a

complete renunciation of right, by the giver, over the thing given, without power of revocation, and a full delivery of possession as a gift, inter vivos.' *Mims* v. *Ross*, 42 *Ga.* 121 (2). This ruling was quoted with approval and followed in *Clark* v. *Bridges*, 163 *Ga.* 542, 544."

We now consider whether the facts created a trust. In a transaction of this nature, if a trust was intended to be created, but such intended trust was not to arise and come into effect until the creator's death, it would be testamentary and fail for the lack of the formalities of a will. But if during the life of the creator a trust was created and became effective, it would not be testamentary merely because the interest of the beneficiary would not take effect in enjoyment or possession before the death of the creator or because he might reserve the right to revoke or modify it. The facts do not show any intention to create a trust in these funds, to come into existence during the life of Montgomery, but on the contrary show an intention to retain these funds until his death, in which event they were then to become the property of Mrs. Stone. This is shown by his conversation with the banker, by the signed notation on the deposit ship, by the statements to Mrs. Stone that, "If I happen to crap out it is all yours," and "If you need any money while I am gone, go to the bank and get it."

While Mrs. Stone relies largely on the case of *Wilder* v. *Howard*, 188 *Ga.* 426 (4 S. E. 2d, 199), it does not support her contention. In fact, the statement of law as set forth in the first part of the preceding paragraph was taken from enunciations in that case. The facts there were different. In that case the deposit was made in the name of "Mrs. D. R. Wilder, trustee for Alice Frances Wilder," thus evidencing an intention on the part of Mrs. Wilder to then and there create a tentative trust.

Mrs. Stone also insists that she was entitled to the funds under the contract between the bank and Montgomery, by which the bank contracted and agreed to pay the funds to her upon the death of Montgomery. This contention is without merit. Under the deposit agreement, Mrs. Stone, though a beneficiary, was not a party or privy, but a mere stranger, and under *Gunter* v. *Mooney*, 72 *Ga.* 205, *Ragan* v. *National City Bank of Rome*, 177 *Ga.* 686 (2) (170 S. E. 889), and citations, *Veruki* v. *Burke*,

202 *Ga.* 844, 849 (44 S. E. 2d, 906), and citations, and *Waxelbaum* v. *Waxelbaum,* 54 *Ga.. App.* 823 (189 S.E. 283), she would have no right of recovery thereunder. While the recent act of the General Assembly (Ga. L. 1949, p. 455), amending Code, § 3-108, was apparently enacted to permit a beneficiary under a contract between other parties to recover, yet it could be given no effect in this case. To do so, would violate the provisions of the United States Constitution (Code, § 1-134), and the State Constitution (Code, § 2-302), as to impairing the obligations of contracts. It would be creating a right for one to recover under an existing contract where he previously had no such right; and at the same time subject a party to an existing contract to liability to a third person who previously had no right under the contract. A vested ground of defense is protected from being destroyed by an act of the legislature. *Bullard* v. *Holman,* 184 *Ga.* 788 (2) (193 S. E. 586, 113 A. L. R. 763); 16 C. J. S. 676, 848, §§ 254, 397.

There are certain requirements for the transfer of property rights both before and after death, and even though Montgomery desired to exercise a spirit of liberality towards Mrs. Stone, his desire could not be given effect by our courts unless it was manifested by some means recognized by law. The facts here do not establish her right to the funds, as a will, a gift causa mortis, a gift inter vivos, a trust, or a contract, and accordingly the court erred in overruling the motion for new trial.

We have confined the rulings heretofore made to the original deposit of $2000, and inasmuch as the case is remanded for another trial we do not pass on evidence as to the deposits aggregating $450 made after Montgomery left for Germany.

*Judgment reversed. All the Justices concur.*