A91A1895. NeSMITH et al. v. ELLERBEE.
(416 SE2d 364)

POPE, Judge.

In December 1988, Maryon Capers Ferguson was diagnosed as having inoperable lung cancer. On January 24, 1989, Ferguson executed his last will and testament in which he made various bequests, including a $10,000 bequest to Chester Capers Ferguson, Jr., his grandson and only surviving heir-at-law, and a bequest of $5,000 to Vonceil NeSmith, a friend who had helped care for Ferguson until his death. Ferguson named his sister Anna Belle Ferguson Ellerbee as the residuary beneficiary. Ellerbee was later appointed to serve as administratrix de bonis non with will annexed of the estate of her brother.

In addition to execution of his will, the undisputed evidence shows that during the week prior to his death, Ferguson requested NeSmith to procure signature cards for five certificates of deposit

that Ferguson held. Ferguson signed all the signature cards, instructed NeSmith to sign the signature card for the certificate of deposit held by Liberty Savings Bank and instructed her to have his grandson sign the signature cards for the remaining four certificates of deposit held by Citizens & Southern National Bank. Ferguson told NeSmith he wanted her to have the certificate of deposit held by Liberty Savings Bank and he wished for his grandson to have the remaining certificates of deposit. Ferguson gave NeSmith the receipts issued by the banks when he purchased the certificates of deposit. On February 20, 1989, NeSmith met with Ferguson's grandson and the grandson signed the signature cards for the certificates of deposit held by the Citizens & Southern National Bank. Neither NeSmith nor Ferguson's grandson presented the signature cards to the banks holding the certificates of deposit until after Ferguson's death on February 21, 1989.

As administratrix, Ellerbee brought suit against Vonceil NeSmith, Chester Capers Ferguson, Jr., and Judy Ferguson, Chester's mother, seeking to recover the proceeds of the five certificates of deposit as well as two checks written by Ferguson to NeSmith shortly before his death. Defendants answered that the checks and certificates of deposit were valid and complete gifts from Ferguson to NeSmith and Chester Ferguson, and therefore not a part of Ferguson's estate. Plaintiff moved for summary judgment, and the trial court granted that motion. Defendants appeal from the grant of summary judgment to plaintiff as it concerns the certificates of deposit.

1. Defendants first argue the trial court erred by holding that the purported transfer of the certificates of deposit from Ferguson to NeSmith and his grandson was not a valid inter vivos gift. "To constitute a valid inter vivos gift, the following criteria must be met: (1) The donor must intend to give the gift; (2) The donee must accept the gift; and (3) The gift must be delivered or some act which under law is accepted as a substitute for delivery must be done." OCGA § 44-5-80.

The attempted transfers of the certificates of deposit fail to meet the criteria set forth above for two reasons. First, NeSmith testified during her deposition that Ferguson had no intention to make a present gift of the certificate of deposit. When asked why Ferguson did not just give the certificate of deposit to NeSmith rather than making it a joint account, NeSmith testified: "Well, as long as he lived, the money was his. He had the money, just like he had everything that was in his will, until he died. If he had signed them over, then they would not have been his any longer, but this way they were his until he died." As the Georgia Supreme Court noted in *Guest v. Stone*, 206 Ga. 239, 241-242 (56 SE2d 247) (1949), "[a] gift inter vivos operates, if at all, in the donor's lifetime, immediately and irrevocably; it is a

gift executed; no further act of parties, no contingency of death or otherwise, is needed to give it effect. To make a valid gift, there must be a present intention to give, and a complete renunciation of right, by the giver, over the thing given, without power of revocation, and a full delivery of possession as a gift, inter vivos." (Citations and punctuation omitted.) Thus, Ferguson did not have the requisite intent to make an inter vivos gift.

Also, Ferguson's acts of signing the signature cards and transferring the documents evidencing the certificates of deposit did not effect delivery of the funds represented by the certificates of deposit. In support of their argument that delivery was completed, defendants rely heavily on our decision in *Philpot v. Temple Banking Co.*, 3 Ga. App. 742 (60 SE 480) (1908). In *Philpot*, we held that delivery of a certificate of deposit from the donor to the donee constituted a valid gift even though the donor had not endorsed the certificate.

We agree with the trial court's conclusion that modern banking practices make our decision in *Philpot* inapplicable to this case. Unlike the donor in the *Philpot* case, Ferguson did not receive a negotiable certificate of deposit when he deposited his funds in the banks. Instead, he received customer receipts. In support of her motion for summary judgment, plaintiff submitted copies of the receipts in question. All of the receipts from Citizens & Southern National Bank stated that the certificates could be transferred only on the books of the bank. The receipt issued by Liberty Savings Bank stated it was non-transferable. Thus, Ferguson's act of physically transferring the receipts to NeSmith was of no consequence because ownership of the certificates could not be transferred in that manner.

Furthermore, employees of both Liberty Savings Bank and Citizens & Southern National Bank submitted affidavits in support of plaintiff's motion for summary judgment in which they stated, inter alia, that the receipts received by Ferguson were nonnegotiable, nonassignable receipts. They also stated that although the signature cards signed by Ferguson, NeSmith and his grandson were not presented until after Ferguson's death, if they had been presented before his death both banks would have allowed Ferguson to revoke his request to have others added to the certificates. It is well-settled that if the donor retains the power of revocation, a valid inter vivos gift cannot be completed. *Guest v. Stone*, supra at 242.

2. Defendants also argue that the trial court erred in holding the purported transfers of the receipts for the deposits from Ferguson to NeSmith and his grandson were not valid gifts causa mortis. "To constitute a valid gift in contemplation of death, the following criteria must be met: (1) The object of the gift must be personal property; (2) The donor must be in his last illness or in peril of death; (3) The gift must be intended to be absolute only in the event of death; (4) The

gift must be perfected by either actual or symbolic delivery; and (5) The gift must be proved by one or more witnesses." OCGA § 44-5-100 (a).

Pretermitting the question of whether Ferguson's transfer of the receipts for the certificates can constitute symbolic delivery within the meaning of OCGA § 44-5-100, we hold that the affidavit submitted by defendants of Reverend Rayfield Boyd was insufficient to prove the gift by a witness. In Reverend Boyd's affidavit, he stated that he was not in the room during the time that Ferguson discussed the certificates of deposit to NeSmith. The record does not reflect that Ferguson told anyone other than NeSmith what his intentions were regarding the certificates of deposit. The only evidence submitted by defendants that Ferguson intended to transfer the certificates to Nesmith are the signature cards and NeSmith's testimony. Under almost identical facts, this court held in *James v. Elder*, 186 Ga. App. 810, 811 (368 SE2d 570) (1988), a trial court is "authorized, if not required," to dismiss as self-serving the declarations of one who has the most to gain from their admission. Accordingly, we hold the trial court did not err by holding that the purported transfers did not constitute a valid gift causa mortis.

3. Defendants assert the trial court erred in holding that Ferguson's attempted transfer of the certificates of deposit did not constitute valid gifts of any kind because the trial court relied erroneously on OCGA § 7-1-810. There is no reference to this statute in the trial court's order. Furthermore, for the reasons set forth in Divisions 1 and 2, the trial court correctly ruled that Ferguson's attempted transfer of the certificates of deposit did not constitute a valid gift.

4. Defendants did not support their fourth enumeration of error by citation of authority or argument of counsel. It is therefore deemed abandoned pursuant to Rule 15 (c) (2) of this court.

5. Defendants complain that the trial court erred by granting plaintiff's "renewed" motion for summary judgment and by considering the affidavit of Mickey Parker. After the trial court conducted a hearing on plaintiff's motion for summary judgment, it wrote a letter to counsel for both parties requesting that the record be supplemented with evidence of the language contained on documentation received by Ferguson from Citizens & Southern National Bank concerning assignability of the certificates of deposit. In response, plaintiff filed a "renewed" motion for summary judgment and submitted the affidavit of Mickey Parker, Vice-President in the Department of Operations for Citizens & Southern National Bank. Defendants first assert it was error for the trial court to entertain a "renewed" motion when an order had not been issued on plaintiff's previous motion for summary judgment. OCGA § 9-11-56 does not prohibit successive or renewed motions for summary judgment. We have previously held

that if a more fully supported motion for summary judgment will cure a deficiency in evidence, it should be the preferred resolution of a case rather than subjecting the parties to the trial process with an inevitable directed verdict. *Hogans v. Food Giant*, 185 Ga. App. 645 (1) (365 SE2d 496) (1988).

Defendants also complain that the affidavit of Parker was submitted after the trial court conducted a hearing on plaintiff's motion for summary judgment and was not on file for at least 30 days before the trial court issued its order on the motion. As we noted in *Howell Mill &c. v. Gonzales*, 186 Ga. App. 909, 910 (2) (368 SE2d 831) (1988), " '(e)ven though (OCGA § 9-11-6 (d)) and (OCGA § 9-11-56 (c)) require an opposing affidavit to be served at least one day prior to the summary judgment hearing, the trial court is vested with a discretion to consider affidavits not so served.' [Cit.]" The trial court did not abuse its discretion by considering the Parker affidavit. Defendants were put on notice by the trial court's letter requesting the information that the evidence contained in the affidavit would be filed with the court. Moreover, before the trial court issued its decision, defendants filed a response to plaintiff's "renewed" motion for summary judgment in which they submitted nothing to counter the Parker affidavit.

*Judgment affirmed. Birdsong, P. J., and Cooper, J., concur.*

DECIDED FEBRUARY 25, 1992.

*Walter E. Leggett, Jr.*, for appellants.
*Harris & James, William C. Harris, John B. Harris III*, for appellee.